UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

V.I.P. MOTOR CARS LTD., DESERT
EUROPEAN MOTORCARS, LTD.,
STRANGER INVESTMENTS D/B/A
STEPHEN WADE TOYOTA, JOHN
O'NEIL JOHNSON TOYOTA, LLC,
HARTLEY BUICK GMC TRUCK, INC.,
LEE OLDSMOBILE-CADILLAC, INC.
D/B/A LEE HONDA, LEE AUTO MALLS-
TOPSHAM, INC. D/B/A LEE TOYOTA OF
TOPSHAM, LANDERS OF HAZELWOOD,
LLC D/B/A LANDERS TOYOTA OF
HAZELWOOD, CANNON CHEVROLET –
OLDSMOBILE – CADILLAC – NISSAN,
INC., CANNON NISSAN OF JACKSON,
LLC, HUDSON CHARLESTON
ACQUISITION, LLC D/B/A HUDSON
NISSAN, SHEARER AUTOMOTIVE
ENTERPRISES III, INC., APEX MOTOR
CORPORATION, on behalf of themselves
and all others similarly situated,

       Plaintiffs,

vs.

AUTOLIV, INC., AUTOLIV ASP, INC.,
AUTOLIV B.V. & CO. KG, AUTOLIV,
JAPAN, LTD., AUTOLIV NORTH
AMERICA, INC., TAKATA CORP., TK
HOLDINGS, INC., TOKAI RIKA CO., LTD.,
TRAM, INC. d/b/a TOKAI RIKA U.S.A.
INC., TRW AUTOMOTIVE HOLDINGS
CORP., TRW DEUTSCHLAND HOLDING
GMBH,

       Defendants.

Case No. _____

**Related to: 12-md-02311;**
**2:12-cv-00600; and, 2:12-cv-00602**

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs V.I.P. Motor Cars Ltd. ("Plaintiff V.I.P."), Desert European Motorcars, Ltd. ("Plaintiff Desert"), Stranger Investments d/b/a Stephen Wade Toyota ("Plaintiff Wade"), John O'Neil Johnson Toyota, LLC ("Plaintiff Johnson"), Hartley Buick GMC Truck, Inc. ("Plaintiff Hartley"), Lee Oldsmobile-Cadillac, Inc. d/b/a Lee Honda ("Plaintiff Lee Honda"), Lee Auto Malls-Topsham, Inc. d/b/a Lee Toyota of Topsham ("Plaintiff Topsham"), Landers of Hazelwood, LLC d/b/a Landers Toyota of Hazelwood ("Plaintiff Hazelwood"), Cannon Chevrolet-Oldsmobile-Cadillac-Nissan, Inc. ("Plaintiff Cannon"), Cannon Nissan of Jackson, LLC ("Plaintiff Cannon Nissan"), Hudson Charleston Acquisition, LLC d/b/a Hudson Nissan ("Plaintiff Hudson Nissan"), Shearer Automotive Enterprises III, Inc. ("Plaintiff Shearer"), Apex Motor Corporation ("Plaintiff Apex") (collectively "Plaintiffs"), file this Class Action Complaint on behalf of themselves and all others similarly situated (the "Classes" as defined below).

Plaintiffs, upon personal knowledge as to the facts pertaining to themselves and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action for damages, injunctive relief and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, and consumer protection laws, and the common law of unjust enrichment, demand a trial by jury, and allege as follows:

## NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against Defendants, suppliers of Occupant Safety Restraint Systems (defined below) globally and in the United States, for engaging in a massive conspiracy to unlawfully fix and artificially raise the prices of these products. Defendants' conspiracy successfully targeted the long-struggling United States automotive industry, raising prices for car manufacturers and dealers alike.

2.      Plaintiffs seek to represent themselves and classes of automobile dealers that purchased Occupant Safety Restraint Systems or vehicles containing Occupant Safety Restraint

Systems during the period from and including March 2006 through such time as the effects of Defendants' unlawful conduct ceased (the "Class Period").

3.     Occupant Safety Restraint Systems are generally comprised of the parts in an automotive vehicle that protect drivers and passengers from bodily harm. Types of different Occupant Safety Restraint Systems include seat belts, airbags, steering wheels, and steering systems.

4.     Defendants Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Japan, Ltd., Autoliv North America, Inc., Takata Corp., TK Holdings, Inc., Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika USA Inc., TRW Automotive Holdings Corp. and TRW Deutschland Holding GmbH, (collectively "Defendants") manufacture, market, and sell Occupant Safety Restraint Systems throughout the United States. The manufacture and sale of Occupant Safety Restraint Systems is a multi-billion dollar industry.

5.     Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to inflate, fix, raise, maintain, or artificially stabilize prices of Occupant Safety Restraint Systems. They carried out their conspiracy by agreeing, during meetings and conversations, to allocate the supply of Occupant Safety Restraint Systems on a model-by-model basis. Defendants then sold Occupant Safety Restraint Systems at noncompetitive prices to automobile manufacturers in the United States and elsewhere.

6.     Competition authorities in the United States and the European Union have been investigating a conspiracy in the market for Occupant Safety Restraint Systems since at least February 2011. As part of its criminal investigation, the United States Department of Justice ("DOJ") is seeking information about anticompetitive conduct in the market for Occupant Safety Restraint Systems, and the Federal Bureau of Investigation ("FBI") has participated in raids,

3

pursuant to search warrants, carried out in at least some of the Defendants' offices. The European Commission Competition Authority ("EC") has also conducted investigations at the European offices of several of the Defendants.

7.     Defendant Autoliv, Inc. has agreed to plead guilty and pay a $14.5 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize and maintain the prices of, Occupant Safety Restraint Systems sold to automobile manufacturers in the United States and elsewhere at various times from at least as early as March 2006 and continuing until at least February 2011. The combination and conspiracy engaged in by Defendant Autoliv, Inc. and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

8.     Defendant TRW Deutschland Holding GmbH has agreed to plead guilty and pay a $5.1 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize and maintain the prices of, Occupant Safety Restraint Systems sold to automobile manufacturers in the United States and elsewhere at various times from at least as early as January 2008 and continuing until at least June 2011. The combination and conspiracy engaged in by Defendant TRW Deutschland Holding GmbH and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

9.     As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiffs and the Classes paid artificially inflated prices for Occupant Safety Restraint Systems during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

10.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and common law unjust enrichment, and seek to obtain restitution, recover damages and secure other relief against Defendants for violations of those laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

11.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.

12.     This Court also has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. § 1332(d), in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants.

13.     This Court also has supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367 because they are so related to the claims asserted in this action over which the court has original jurisdiction that they form part of the same case or controversy.

14.     Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or

more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this district.

15.     This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia*: (a) transacted business in the United States, including in this district; (b) directly or indirectly sold or marketed substantial quantities of Occupant Safety Restraint Systems throughout the United States, including in this district; (c) had substantial aggregate contacts with the United States as a whole, including in this district; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this district. Defendants also conduct business throughout the United States, including in this district, and they have purposefully availed themselves of the laws of the United States.

16.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

17.     The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

18.     Occupant Safety Restraint Systems manufactured abroad by Defendants and sold for use in automobiles either manufactured in the United States or manufactured abroad and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any Occupant Safety Restraint Systems are purchased in the

United States, and such Occupant Safety Restraint Systems do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

19.     By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to fix or inflate prices of Occupant Safety Restraint Systems, a conspiracy that unreasonably restrained trade and adversely affected the market for Occupant Safety Restraint Systems.

20.     Defendants' conspiracy and wrongdoing described herein adversely affected automobile dealers in the United States who purchased Occupant Safety Restraint Systems or vehicles containing Occupant Safety Restraint Systems, including Plaintiffs and members of the Classes.

## PARTIES

**Plaintiffs**

21.     Plaintiff V.I.P. is a California company with its principal place of business in Palm Springs, California.  Plaintiff VIP is an authorized Mercedes, BMW, Infiniti, and Hyundai dealer who bought Mercedes-, BMW-, Infiniti-, and Hyundai-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

7

22.     During the Class Period Plaintiff V.I.P. purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff V.I.P. also purchased Occupant Safety Restraint Systems, for its repair and service business, during the Class Period.  Plaintiff V.I.P. purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in California.  Plaintiff V.I.P. has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

23.     Plaintiff Desert is a California company, with its principal place of business in Rancho Mirage, California.  Plaintiff Desert is an authorized Rolls Royce, Bentley, Aston Martin, Maserati, Porsche, Jaguar, Land Rover, Audi, Lotus, and Spyker dealer who bought Rolls Royce-, Bentley-, Aston Martin-, Maserati-, Porsche-, Jaguar-, Land Rover-, Audi-, Lotus-, and Spyker-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

24.     During the Class Period Plaintiff Desert purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Desert also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Desert purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in California.  Plaintiff Desert has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

25.     Plaintiff Wade is a Utah corporation, with its principal place of business in St. George, Utah.  Plaintiff Wade is an authorized Toyota dealer, who bought Toyota-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-

8

2:13-cv-12921-AJT-DRG   Doc # 1   Filed 07/03/13   Pg 9 of 78   Pg ID 9

conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

26.     During the Class Period Plaintiff Wade purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Wade also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Wade purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Utah.  Plaintiff Wade has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

27.     Plaintiff Johnson is a Mississippi limited liability company, with its principal place of business in Meridian, Mississippi.  Plaintiff Johnson is an authorized Toyota dealer, who bought Toyota-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

28.     During the Class Period Plaintiff Johnson purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Johnson also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Johnson purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Mississippi.  Plaintiff Johnson has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

29.     Plaintiff Hartley is a New York corporation, with its principal place of business in Jamestown, New York.  During the Class Period, Plaintiff Hartley has been an authorized

Honda, Buick, Pontiac, and GM dealer, who bought Honda-, Buick-, Pontiac-, and GM-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators.

30.     During the Class Period Plaintiff Hartley purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Hartley also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Hartley purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in New York. Plaintiff Hartley has also displayed, sold, serviced, and advertised its vehicles in New York during the Class Period.

31.     Plaintiff Lee Honda is a Maine corporation, with its principal place of business in Auburn, Maine. Plaintiff Lee Honda is an authorized Honda dealer, who bought Honda-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

32.     During the Class Period Plaintiff Lee Honda purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Lee Honda also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Lee Honda purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Maine. Plaintiff Lee Honda has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

33.     Plaintiff Topsham is a Maine corporation, with its principal place of business in Topsham, Maine.  Plaintiff Topsham is an authorized Toyota dealer, who bought Toyota-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

34.     During the Class Period Plaintiff Topsham purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Topsham also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Topsham purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Maine.  Plaintiff Topsham has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

35.     Plaintiff Hazelwood is an Arkansas corporation, with its principal place of business in Hazelwood, Missouri.  Plaintiff Hazelwood is an authorized Toyota dealer, who bought Toyota-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

36.     During the Class Period Plaintiff Hazelwood purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Hazelwood also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hazelwood purchased and received both the afore-

mentioned vehicles and Occupant Safety Restraint Systems in Missouri.  Plaintiff Hazelwood

has also displayed, sold, serviced, and advertised its vehicles in Missouri during the Class Period.

37.     Plaintiff Cannon is a Mississippi corporation, with its principal place of business

in Greenwood, Mississippi.  Plaintiff Cannon is an authorized Chevrolet and Cadillac dealer,

who bought Chevrolet- and Cadillac-brand cars containing Occupant Safety Restraint Systems

manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint

Systems manufactured by the Defendants or their co-conspirators during the Class Period.

38.     During the Class Period Plaintiff Cannon purchased vehicles containing Occupant

Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.

Plaintiff Cannon also purchased Occupant Safety Restraint Systems manufactured by one or

more Defendants or their co-conspirators, for its repair and service business, during the Class

Period.  Plaintiff Cannon purchased and received both the afore-mentioned vehicles and

Occupant Safety Restraint Systems in Mississippi.  Plaintiff Cannon has also displayed, sold,

serviced, and advertised its vehicles in Mississippi during the Class Period.

39.     Plaintiff Cannon Nissan is a Mississippi limited liability company with its

principal place of business in Jackson, Mississippi.  Plaintiff Cannon is an authorized Nissan

dealer, who bought Nissan-brand cars containing Occupant Safety Restraint Systems

manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint

Systems manufactured by the Defendants or their co-conspirators during the Class Period.

40.     During the Class Period Plaintiff Cannon Nissan purchased vehicles containing

Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-

conspirators.  Plaintiff Cannon Nissan also purchased Occupant Safety Restraint Systems,

manufactured by one or more Defendants or their co-conspirators, for its repair and service

12

business, during the Class Period.  Plaintiff Cannon purchased and received both the afore-
mentioned vehicles and Occupant Safety Restraint Systems in Mississippi.  Plaintiff Cannon has
also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

41.     Plaintiff Hudson Nissan is a South Carolina limited liability company with its
principal place of business in North Charleston, South Carolina.  Plaintiff Hudson Nissan is an
authorized Nissan dealer, who bought Nissan-brand cars containing Occupant Safety Restraint
Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety
Restraint Systems manufactured by the Defendants or their co-conspirators during the Class
Period.

42.     During the Class Period Plaintiff Hudson Nissan purchased vehicles containing
Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-
conspirators.  Plaintiff Hudson Nissan also purchased Occupant Safety Restraint Systems,
manufactured by one or more Defendants or their co-conspirators, for its repair and service
business, during the Class Period.  Plaintiff Hudson Nissan purchased and received both the
afore-mentioned vehicles and Occupant Safety Restraint Systems in South Carolina.  Plaintiff
Hudson Nissan has also displayed, sold, serviced, and advertised its vehicles in South Carolina
during the Class Period.

43.     Plaintiff Shearer is a Vermont corporation with its principal place of business in
Rutland, Vermont.  Plaintiff Shearer is an authorized Honda dealer, who bought Honda-brand
vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the
Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured
by one or more of the Defendants or their co-conspirators during the Class Period.

13

44.     During the Class Period Plaintiff Shearer purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Shearer also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.   Plaintiff Shearer purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Vermont.   Plaintiff Shearer has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

45.     Plaintiff Apex is a Vermont corporation with its principal place of business in South Burlington, Vermont.   Plaintiff Apex is an authorized Acura dealer, who bought Acura-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

46.     During the Class Period Plaintiff Apex purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Apex also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Apex purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Vermont.   Plaintiff Apex has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

**Defendants**

**The TRW Defendants**

47.     Defendant TRW Automotive Holdings Corp. ("TRW") is a Delaware corporation with its principal place of business in Livonia, Michigan. TRW directly and/or through its

subsidiaries, which it wholly owned and/or controlled, manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

48.     Defendant TRW Deutschland Holding Gmbh ("TRW Germany") is a German corporation with its principal place of business in Koblenz, Germany.  Defendant TRW Germany, directly and/or through its subsidiaries which it wholly owned and/or controlled, manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.  TRW Germany is a subsidiary of Defendant TRW.

### The Takata Defendants

49.     Defendant Takata Corp. ("Takata") is a Japanese corporation with its principal place of business in Tokyo, Japan. Defendant Takata directly and/or through its subsidiaries, which it wholly owned and/or controlled, manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

50.     Defendant TK Holdings, Inc. ("TK"), is a Delaware corporation with its principal place of business in Auburn Hills, Michigan. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Takata. Defendant TK manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent.

**The Autoliv Defendants**

51.     Defendant Autoliv, Inc. ("Autoliv") is a Delaware corporation with its principal place of business in Stockholm, Sweden. Defendant Autoliv, Inc.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

52.     Defendant Autoliv ASP, Inc. is an Indiana corporation with its principal place of business in Ogden, Utah. It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc. Defendant Autoliv ASP, Inc. manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent.

53.     Defendant Autoliv B.V. & Co. KG is a German corporation with its principal place of business in Elmshorn, Germany. It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc. Defendant Autoliv B.V. & Co. KG manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent.

54.     Autoliv Japan Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan. It is a wholly owned and/or controlled subsidiary of Autoliv, Inc. Autoliv Japan Ltd. manufactured, marketed, and/or sold Automobile Occupant Safety Systems that were

purchased throughout the United States, including in this district, under the control and direction of its Swedish parent at all times during the Class Period.

### **The Tokai Rika Defendants**

55.     Defendant Tokai Rika Co., Ltd. is a Japanese corporation with its principal place of business in Aichi, Japan. Defendant Tokai Rika Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

56.     Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. is a Michigan corporation with its principal place of business in Plymouth, Michigan. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Tokai Rika Co., Ltd. Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent.

### **AGENTS AND CO-CONSPIRATORS**

57.     Each Defendant acted as the principal of or agent for other Defendants with respect to the acts, violations, and common course of conduct alleged.

58.     Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

59.     Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

**FACTUAL ALLEGATIONS**

A.     <u>**The Occupant Safety Restraint System Industry**</u>

60.     Occupant Safety Restraint Systems are generally comprised of the parts in an automotive vehicle that protect drivers and passengers from bodily harm. Occupant Safety Restraint Systems include seat belts, air bags, steering wheels (or steering systems), and safety electronic systems.



Figure 1

61.     Occupant Safety Restraint Systems are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process. They are also installed in cars to replace worn out, defective, or damaged Occupant Safety Restraint Systems.

62.     For new cars, the OEMs—mostly large automotive manufacturers such as Honda, Toyota, Volvo, and General Motors—purchase Occupant Safety Restraint Systems directly from Defendants.

18

63.     When purchasing Occupant Safety Restraint Systems and related products, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers. Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production.

64.     Defendants and their co-conspirators supplied Occupant Safety Restraint Systems to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere. Defendants and their co-conspirators manufactured Occupant Safety Restraint Systems (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) abroad for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) abroad for installation in vehicles manufactured abroad for export to and sale in the United States.

65.     Plaintiffs and members of the proposed Classes purchased Occupant Safety Restraint Systems indirectly from one or more of the Defendants or their co-conspirators. By way of example, an automobile dealer may purchase an Occupant Safety Restraint System indirectly from Defendants, as part of purchasing a new vehicle. An automobile dealer may also purchase a replacement Occupant Safety Restraint System indirectly from Defendants, when repairing a damaged vehicle or where the vehicle's Occupant Safety Restraint System is defective.

66.     According to Autoliv's 2011 Annual Report, the global market for Occupant Safety Restraint Systems in 2010 was $18.1 billion and the North American market for Occupant Safety Restraint Systems was $4.2 billion.

19

67.     The global Occupant Safety Restraint Systems market is dominated and controlled by large manufacturers, the top three of which are Defendants that control almost 75% of the market. The Autoliv Defendants account for more than 33% of the global market for Occupant Safety Restraint Systems; as Autoliv states in its 2011 Annual Report, it is "the world's largest automotive safety supplier with sales to all the leading car manufacturers in the world." TRW accounts for approximately 20% of the global market for Occupant Safety Restraint Systems. And the Takata Defendants account for approximately 20% of the Occupant Safety Restraint Systems global market.

68.     By virtue of their market shares, Defendants are the dominant manufacturers and suppliers of Occupant Safety Restraint Systems in the United States and the world.

69.     Airbags are a type of Occupant Safety Restraint System. Airbags are occupant restraints designed to control the movement of an occupant inside a vehicle in the event of a collision. An Airbag consists of a light fabric air bag, an inflator, which through use of pressurized gas (typically generated by pyrotechnic materials), rapidly inflates the Airbag upon deployment, and an initiator to initiate the deployment. It may also include, depending on the requirements of the vehicle manufacturer, an injection molded plastic decorative cover or other devices associated with the Airbag. According to the National Highway Traffic Safety Administration, a typical new Airbag retailed for approximately $1,000 from a car dealer in 2011.

70.     In 2012, the total dollar-value of Airbags sold in the U.S. reached $6.7 billion.



Figure 2.

71.     According to Autoliv's website, it manufactures more than one-third of the Airbags sold in North America, and according to its 2011 10-K, Autoliv manufactures over 40% of the side Airbags and almost 30% of the frontal Airbags sold in the world. TRW and Takata are also major manufacturers of Airbags.

72.     Seatbelts are another type of Occupant Safety Restraint System. Seatbelts are safety strap restraints designed to secure an occupant in position in a vehicle in the event of a collision. A Seatbelt includes belt webbing, a buckle, a retractor, and hardware for installation in a vehicle. It may also include, depending on the requirements of the vehicle manufacturer, a height adjuster, a pretensioner, or other devices associated with the Seatbelt.  In 2012, the total dollar-value of Seatbelts sold in the U.S. reached over $900 million.



Figure 3.

73.   According to Autoliv's website, it manufactures almost one-third of the Seatbelts sold in North America, and according to its 2011 10-K, Autoliv manufactures 40% of the Seatbelts sold in the world. TRW and Takata are also major manufacturers of Seatbelts.

74.   Steering Wheels are another type of Occupant Safety Restraint System. Steering Wheels consist of a die-cast armature (frame) covered by molded polyurethane. Steering Wheels are then finished with leather, wood trim, or plastic, and may include various electronic features and controls, depending on the requirements of a vehicle manufacturer.

75.   In 2012, the dollar-value for Steering Wheels and related components sold in the U.S. reached $2.24 billion.



Figure 4.

76.     According to its website, Autoliv manufactures more than 15% of the Steering

Wheels sold in North America, and in its 2011 10-K, Autoliv states that it manufactures almost

30% of the Steering Wheels sold in the world. TRW and Takata are also major manufacturers of

Steering Wheels.

**B.     The Structure and Characteristics of the Occupant Safety Restraint Systems Market Render the Conspiracy More Plausible**

77.     The structure and other characteristics of the market for Occupant Safety

Restraint Systems in the United States are conducive to a price-fixing agreement, and have made

collusion particularly attractive. Specifically, the market for Occupant Safety Restraint Systems:

(1) has high barriers to entry; (2) has inelasticity of demand; (3) is highly concentrated; and (4) is

rife with opportunities to conspire.

**1.     The Occupant Safety Restraint Systems Market Has High Barriers to Entry**

78.     A collusive arrangement that raises product prices above competitive levels

would, under basic economic principles, attract new entrants seeking to benefit from the

supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

79.     There are substantial barriers that preclude, reduce, or make more difficult entry into the market for Occupant Safety Restraint Systems. A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, and longstanding customer relationships.

80.     In addition, an OEM cannot freely change its suppliers of Occupant Safety Restraint Systems because OEMs design the features of their vehicles, including the electronics, mechanics, thermal distribution, and other features, so that they may be integrated with a selected Occupant Safety Restraint System. Thus, it would be difficult for a new competitor to enter the market after a vehicle has been specifically designed to be integrated with a particular Occupant Safety Restraint System.

81.     Research and development costs are also significant for Occupant Safety Restraint Systems, creating an additional barrier to entry. Airbags are constantly researched for better deployment speeds, Seatbelts are constantly researched for better functionality and quality, and Steering Wheels are constantly researched for better precision and rotation.

82.     Defendants also own several patents for Occupant Safety Restraint Systems. For example, TRW owns Airbag, Steering Wheel, and Seatbelt patents. These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

### 2. There is Inelasticity of Demand for Occupant Safety Restraint Systems

83.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

84.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

85.     Demand for Occupant Safety Restraint Systems is highly inelastic because there are no close substitutes for these products. In addition, customers must purchase Occupant Safety Restraint Systems as an essential part of a vehicle, even if the prices are kept at a supracompetitive level.

### 3. The Market for Occupant Safety Restraint Systems Is Highly Concentrated

86.     A highly concentrated market is more susceptible to collusion and other anticompetitive practices.

87.     As discussed above, Defendants dominate the Occupant Safety Restraint Systems market. Three of the Defendants control almost 75% of the global market.

### 4. Defendants Had Ample Opportunities to Conspire

88.     Defendants attended industry events where they had the opportunity to meet, have improper discussions under the guise of legitimate business contacts, and perform acts necessary

for the operation and furtherance of the conspiracy. In a June 6, 2012, press release, the DOJ explained that Defendant Autoliv and its co-conspirators met in secret and agreed to allocate the supply of various automotive parts. According to the Autoliv information, Autoliv and its coconspirators participated in meetings, conversations, and communications to discuss and agree on the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems, and agreed, during meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-by-model basis.

C.     **Government Investigations**

89.     A globally coordinated antitrust investigation is taking place in the United States, Europe, Canada, and Japan, aimed at suppliers of automotive parts in general, and Occupant Safety Restraint Systems in particular. The DOJ has confirmed that its auto parts investigation is the largest criminal investigation that the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the illegal conduct. Almost $1 billion in criminal fines have already been levied against various automotive parts manufacturers.

90.     The probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the EC. The EC and the FBI have executed surprise raids at the European and U.S. offices of several auto parts manufacturers, including certain Defendants, as part of an investigation into anticompetitive conduct related to the manufacturing and sale of automotive parts.

91.     Defendants Autoliv, TRW, and Takata have admitted that they are cooperating with the antitrust investigators. Autoliv, Inc. stated in its 2011 Annual Report that its subsidiary, Autoliv ASP, Inc., received a grand jury subpoena from the Antitrust Division of the United

26

States Department of Justice on February 8, 2011. "The subpoena requested documents and information as part of a long-running investigation into possible anticompetitive behavior among certain suppliers to the automotive vehicle industry, including Autoliv." Autoliv, Inc.'s 2011 Annual Report also stated that, on June 7-9, 2011, representatives of the EC visited two facilities of Autoliv B.V. & Co. KG to gather information for a similar inquiry.

92.     TRW stated in its 2011 Annual Report that "in June 2011, European antitrust authorities visited certain of our Occupant Safety Systems business unit locations in Germany to gather information. We also received a subpoena related to the Antitrust Investigations in the United States from the U.S. Department of Justice."

93.     On February 23, 2010, investigators from the FBI raided the Plymouth, Michigan, offices of Tokai Rika as part of a federal antitrust investigation. Special Agent Sandra Berchtold stated that the affidavits containing facts supporting issuance of the search warrants were filed in federal court under seal.

94.     Takata Corp. stated in its 2011 Annual Report that TK Holdings, Inc., a U.S. subsidiary, "became the subject to an investigation conducted by the Federal Bureau of Investigation on February 8, 2011. TK Holdings, Inc. is cooperating fully with the investigation." Alby Berman, vice-president of marketing and public relations for TK Holdings, Inc., said the subpoena "targeted safety system suppliers – seat belts, air bags, steering wheels and safety electronics – any communications with competitors, and specifically mentioned Tokai Rika" and that the subpoena targeted communications dating back to January 1, 2005. Special Agent Sandra Berchtold, media coordinator for the FBI, confirmed that the FBI raided TK Holdings, Inc.'s Auburn Hills offices.

95.     The DOJ has stated that it is conducting an investigation of potential antitrust activity and coordinating its investigation with antitrust regulators in Europe.

96.     To obtain the search warrant to raid TK Holdings, Inc., the FBI was legally required to have probable cause, accepted by a magistrate, to believe that it would obtain evidence of an antitrust violation as a result of executing the search warrant—that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and that claimed evidence must have been examined and accepted by a magistrate. That belief, which was recounted in sworn affidavits or testimony, must be grounded on reasonably trustworthy information.

### D.    Guilty Plea Agreements

97.     Defendant Autoliv has agreed to plead guilty and agreed to pay a total of $14.5 million in criminal fines concerning a two-count criminal investigation for fixing the prices of seatbelts, steering wheels, and airbags.  Autoliv has admitted to conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as March 2006 and continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1. Among other things, Autoliv admitted to: (a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems; (b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint

28

Systems; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-by-model basis; (d) submitting bids and price quotations to certain automobile manufacturers in accordance with the agreements reached; (e) selling Occupant Safety Restraint Systems to certain automobile manufacturers at collusive and noncompetitive prices; and (f) accepting payment for Occupant Safety Restraint Systems sold to certain automobile manufacturers at collusive and noncompetitive prices.

98.     Defendant TRW Germany has agreed to plead guilty and agreed to pay a total of $5.1 million in criminal fines concerning a two-count criminal investigation for fixing the prices of seatbelts, steering wheels and airbags.  TRW Germany has admitted to conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as January 2008 to until at least June 2011 in violation of the Sherman Act, 15 U.S.C. § 1. Among other things, TRW Germany admitted to: (a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems; (b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-by-model basis; (d) submitting bids and price quotations to certain automobile manufacturers in accordance with the agreements reached; (e) selling Occupant Safety Restraint Systems to certain automobile

29

manufacturers at collusive and noncompetitive prices; and (f) accepting payment for Occupant

Safety Restraint Systems sold to certain automobile manufacturers at collusive and

noncompetitive prices.

## CLASS ACTION ALLEGATIONS

99.     Plaintiffs bring this action on behalf of themselves and as a class action under

Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive

relief on behalf of the following class (the "Nationwide Class"):

> All automobile dealers that during the Class Period,  (a) purchased
> Occupant Safety Restraint Systems manufactured by the
> Defendants or any current or former subsidiary or affiliate thereof
> or any co-conspirator, or (b) purchased vehicles containing
> Occupant Safety Restraint Systems manufactured by the
> Defendants or any current or former subsidiary, affiliate thereof or
> co-conspirator.

100.     Plaintiffs also bring this action on behalf of themselves and as a class action under

Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the

antitrust, unfair competition, unjust enrichment and consumer protection laws of the states whose

laws are set forth in the Second and Third Claims below, as well as the unjust enrichment laws of

Missouri, Massachusetts and Illinois (collectively the "Indirect Purchaser States").  These claims

are brought by Plaintiffs on behalf of themselves and entities in the Indirect Purchaser States

listed in the Second, Third and Fourth Claims as follows (the "Damages Class"):

> All automobile dealers, in the Indirect Purchaser States, that,
> during the Class Period (a) purchased Occupant Safety Restraint
> Systems manufactured by one of the Defendants or any current or
> former subsidiary or affiliate thereof, or any co-conspirator or (b)
> purchased vehicles containing Occupant Safety Restraint Systems
> manufactured by one of the Defendants or any current or former
> subsidiary, affiliate or co-conspirator thereof.

101.     The Nationwide Class and the Damages Class are referred to herein as the

"Classes."  Excluded from the Classes are Defendants, their parent companies, subsidiaries and

30

affiliates, any co-conspirators, federal governmental entities, and instrumentalities of the federal government, states, and their subdivisions, agencies, and instrumentalities.

102.    Although Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are at least thousands of members in each Class.

103.    Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Occupant Safety Restraint Systems sold in the United States;

(b)    The identity of the participants of the alleged conspiracy;

(c)    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)    Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief;

(f)    Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)    The effect of the alleged conspiracy on the prices of Occupant Safety Restraint Systems sold in the United States during the Class Period;

(i)    Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the members of the Classes;

31

(j)     The appropriate injunctive and related equitable relief for the Nationwide Class; and

(k)     The appropriate class-wide measure of damages for the Damages Class.

104.   Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct because they paid artificially inflated prices for Occupant Safety Restraint Systems purchased indirectly from Defendants or their co-conspirators.

105.   Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

106.   The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

107.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism provide injured entities with a method for obtaining redress for claims that might not be practicable to pursue individually and substantially outweigh any difficulties that may arise in the management of this class action.

108.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

**PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY**

109.    Defendants' price-fixing conspiracy had the following effects, among others:

(a)    Price competition has been restrained or eliminated with respect to Occupant Safety Restraint Systems;

(b)    The prices of Occupant Safety Restraint Systems have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)    Defendants charged purchasers of their Occupant Safety Restraint Systems inflated, fixed and stabilized prices for such Occupant Safety Restraint Systems;

(d)    Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Occupant Safety Restraint Systems they sold to Plaintiffs and the Classes, firms who sold Defendants' Occupant Safety Restraint Systems and vehicles to Plaintiffs and the Classes passed Defendants' overcharges  on to them;

(e)    Defendants' overcharges passed through each level of distribution as they traveled to Plaintiffs and the Classes; and

(f)    Automobile dealers purchasing Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems have been deprived of free and open competition.

110.    During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for Occupant Safety Restraint Systems, as a result of Defendants' conspiracy.

111.    An increase in the prices of Occupant Safety Restraint Systems caused an increase in the price of vehicles during the Class Period.

112.    The market for Occupant Safety Restraint Systems and the market for cars are inextricably linked and intertwined because the market for Occupant Safety Restraint Systems exists to serve the vehicle market. Without the vehicles, the Occupant Safety Restraint Systems have little to no value because they have no independent utility and must be inserted into vehicles to serve any function.  Indeed, the demand for vehicles creates the demand for Occupant Safety Restraint Systems.

113.    Occupant Safety Restraint Systems are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle and are not altered during the manufacturing process.  As a result, Occupant Safety Restraint Systems follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Occupant Safety Restraint Systems can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

114.    Just as Occupant Safety Restraint Systems can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Occupant Safety Restraint Systems affect prices paid by indirect purchasers of new motor vehicles containing Occupant Safety Restraint Systems.

115.    Occupant Safety Restraint Systems have their own part numbers, which permit them to be tracked.

116.    Occupant Safety Restraint Systems are pieces of sophisticated equipment that are necessary to operate a vehicle.

117.    Occupant Safety Restraint Systems are found in every modern vehicle and can be removed from a finished vehicle and replaced.

118.    The Occupant Safety Restraint Systems subject to Defendants' conspiracy and at issue in this lawsuit only have one use: to be inserted into vehicles.  Whether Occupant Safety Restraint Systems are sold by themselves or in vehicles, their purpose is to be inserted into vehicles to protect drivers and passengers from bodily harm.

119.    Occupant Safety Restraint Systems comprise a not insignificant portion of the cost of a vehicle.

120.    The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig, or stabilize the price of Occupant Safety Restraint Systems and, as a direct and foreseeable result, the price of new motor vehicles containing Occupant Safety Restraint Systems and the price of Occupant Safety Restraint Systems purchased for repair purposes.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis—called regression analysis—is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product or service that is an assemblage of costs.  Thus, it is possible to isolate and identify only the impact of an increase in the price of Occupant Safety Restraint Systems on prices for new motor vehicles even though such products contain a number of other components whose prices may be changing over time.  A regression model can explain how variation in the price of Occupant Safety Restraint Systems affects changes in the price of new motor vehicles.  In such models, the price of Occupant Safety Restraint Systems would be treated as an independent or explanatory variable.  The model can isolate how changes in the price of Occupant Safety Restraint Systems impact the price of new motor vehicles containing

Occupant Safety Restraint Systems while controlling for the impact of other price-determining factors.

121.    The precise amount of the overcharge impacting the prices of new motor vehicles containing Occupant Safety Restraint Systems can be measured and quantified.  Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution.  Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

122.    By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Occupant Safety Restraint Systems than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent and Plaintiffs' and Class members' damages are measureable.

### DAMAGE TO PLAINTIFFS AND OTHER CLASS MEMBERS CAUSED BY DEFENDANTS' ILLEGAL ACTIVITIES

123.    Defendants' conspiracy resulted in Defendants charging inflated prices to firms who directly purchased Occupant Safety Restraint Systems from them and in those purchasers raising their prices to subsequent purchasers.

124.    Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Occupant Safety Restraint Systems they sold to Plaintiffs and the Classes, firms who sold such Occupant Safety Restraint Systems and vehicles passed Defendants' overcharges on to Plaintiffs and the Classes.

125.    Plaintiffs and the Classes are entitled to the overcharges they paid for Occupant Safety Restraint Systems.

126.    Because, among other reasons, of the imperfect nature of competition among automobile dealers and the differentiation among dealers by brand and by location, Plaintiffs and the Classes had to and did absorb, at the very least, a significant portion of the overcharges that they paid due to Defendants' illegal activities.

127.    Plaintiffs have standing and have suffered damage compensable by indirect purchaser laws and they and members of the classes they seek to represent have sustained significant damage and injury as a result of Defendants' conspiracy.

**PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS**

A.    **The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover the Claims**

128.    Plaintiffs repeat and reallege the allegations set forth above.

129.    Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until the public announcements of Autoliv's agreement to plead guilty, on June 6, 2012.

130.    Plaintiffs and the members of the Classes are automobile dealers who purchased automobiles or purchased Occupant Safety Restraint Systems to replace or repair damaged or defective Occupant Safety Restraint Systems.

131.    They had no direct contact or interaction with any of the Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the public announcements of Autoliv's agreement to plead guilty, on June 6, 2012.

132.    No information in the public domain was available to the Plaintiffs and the members of the Classes prior to the public announcements of Autoliv's agreement to plead

37

guilty, on June 6, 2012, that revealed sufficient information to suggest that any one of the Defendants was involved in a criminal conspiracy to price-fix and rig bids for Occupant Safety Restraint Systems.  Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

133.    For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

### B.    Fraudulent Concealment Tolled the Statute of Limitations

134.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes.  Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the public announcement of Autoliv's agreement to plead guilty, on June 6, 2012.

135.    Because Defendants' agreements, understandings, and conspiracies were kept secret until June 6, 2012, Plaintiffs and members of the Classes before that time were unaware of Defendants' unlawful conduct, and they did not know before then that they were paying supracompetitive prices for Occupant Safety Restraint Systems throughout the United States during the Class Period.

136.    Defendants had secret communications to collusively fix prices, rig bids and allocate markets for Occupant Safety Restraint Systems.

137.     Defendants also concealed their conspiracy by submitting bids to OEMs, to give the appearance of competition, despite having already determined, among themselves, who would win each bid.

138.     The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

139.     By its very nature, Defendants' anticompetitive conspiracy was inherently self-concealing.  Occupant Safety Restraint Systems are not exempt from antitrust regulation, and thus, before June 6, 2012, Plaintiffs reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Occupant Safety Restraint Systems' prices before June 6, 2012.

140.     Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

141.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until June 6, 2012, when the DOJ announced that Autoliv had agreed to plead guilty to the conspiracy.

39

142.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

### FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

143.    Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

144.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

145.    At least as early as March 2006, and continuing until at least the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Occupant Safety Restraint Systems, thereby creating anticompetitive effects.

146.    The anticompetitive acts were intentionally directed at the United States market for Occupant Safety Restraint Systems and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Occupant Safety Restraint Systems throughout the United States.

147.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Occupant Safety Restraint Systems.

148.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Occupant Safety Restraint Systems have been harmed by being forced to pay inflated, supracompetitive prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

149.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

150.    Defendants' conspiracy had the following effects, among others:

        (a)    Price competition in the market for Occupant Safety Restraint Systems has been restrained, suppressed, and/or eliminated in the United States;

        (b)    Prices for Occupant Safety Restraint Systems sold by Defendants and their coconspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

        (c)    Plaintiffs and members of the Nationwide Class who purchased Occupant Safety Restraint Systems or vehicles containing Occupant Safety Restraint Systems manufactured by Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

151.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems purchased from entities who purchased Occupant Safety Restraint Systems from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

41

152.    Plaintiffs and members of the Nationwide Class will continue to be subject to Defendants' price-fixing, bid-rigging, and market allocations, which will deprive Plaintiffs and members of the Nationwide Class of the benefits of free competition, including competitively-priced Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

153.    Plaintiffs and members of the Nationwide Class will continue to lose funds due to overpayment for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems, as they are required to purchase vehicles and Occupant Safety Restraint Systems in order to continue to operate their businesses.

154.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

155.    Plaintiffs and members of the Nationwide Class will be at the mercy of Defendants' unlawful conduct until the Court orders an injunction.

156.    Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

157.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

158.    From as early as March 2006 until at least the filing of this Complaint, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Occupant Safety Restraint Systems in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

159.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for Occupant Safety Restraint Systems and to allocate customers for Occupant Safety Restraint Systems in the United States.

160.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Occupant Safety Restraint Systems at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Occupant Safety Restraint Systems sold in the United States;

(b)    allocating customers and markets for Occupant Safety Restraint Systems in the United States in furtherance of their agreements; and

(c)    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

161.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Occupant Safety Restraint Systems.

162.    Defendants' anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the following state antitrust statutes.

163.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

43

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

164.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Occupant Safety Restraint Systems at

44

supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and

Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of

action among the Defendants and their co-conspirators the substantial terms of which were to fix,

raise, maintain, and stabilize the prices of, and to allocate markets for, Occupant Safety Restraint

Systems.

(c)     For the purpose of forming and effectuating the unlawful trust, the

Defendants and their co-conspirators have done those things which they combined and conspired

to do, including but in no way limited to the acts, practices and course of conduct set forth above

and the following: (1) Fixing, raising, stabilizing, and pegging the price of Occupant Safety

Restraint Systems; and (2) Allocating among themselves the production of Occupant Safety

Restraint Systems.

(d)     The combination and conspiracy alleged herein has had, inter alia, the

following effects: (1) Price competition in the sale of Occupant Safety Restraint Systems has

been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Occupant

Safety Restraint Systems sold by Defendants and their co-conspirators have been fixed, raised,

stabilized, and pegged at artificially high, non-competitive levels in the State of California and

throughout the United States; and (3) Those who purchased Occupant Safety Restraint Systems

or vehicles containing Occupant Safety Restraint Systems from entities who purchased them

directly from Defendants and their co-conspirators have been deprived of the benefit of free and

open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property in

that they paid more for Occupant Safety Restraint Systems than they otherwise would have paid

in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section

16720 of the California Business and Professions Code, Plaintiffs and members of the Damages

Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant

to Section 16750(a) of the California Business and Professions Code.

165.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1)

Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated

throughout the District of Columbia; (2) Occupant Safety Restraint Systems prices were raised,

fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia;

(3) Plaintiffs and members of the Damages Class were deprived of free and open competition;

and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated

prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint

Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected

District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.*

Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available

46

under District of Columbia Code Ann. §§ 28-4501, *et seq.*

166.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-4, et seq.

(a)  Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems' price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Occupant Safety Restraint Systems' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)  During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

(c)  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4.

167.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

47

the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety

Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected

Illinois commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of 740 Illinois Compiled Statutes 10/1, *et seq.*  Accordingly,

Plaintiffs and members of the Damages Class seek all forms of relief available under 740 Illinois

Compiled Statutes 10/1, *et seq.*

168.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Iowa Code §§ 553.1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1)

Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated

throughout Iowa; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained,

and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the

Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety

Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected

Iowa commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct,

48

Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

169.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

49

170.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Maine; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition: and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10. §§ 1101, *et seq.*

171.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Occupant Safety Restraint Systems prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

172.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period Defendants' illegal conduct substantially affected

Minnesota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

173.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition: and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in

52

restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

174.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

175.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

176.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4)

54

Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)      During the Class Period Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

177.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)      During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

55

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann.§§ 57-1-1, *et seq.*

178.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems when they purchased vehicles containing Occupant Safety Restraint Systems, or purchased products that were otherwise of lower quality, than would have been absent the conspirators illegal acts, or were unable to purchase products that they would have otherwise have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a per se violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

179.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

180.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

> (a)  Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

> (b)  During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

> (c)  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

> (d)  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

181.  Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

> (a)  Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the

Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

182.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

183.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1. *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

59

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

184.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code

Ann. §§ 47-25-101, *et seq.*

185.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Utah; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

186.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated

61

throughout Vermont; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

187.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1. *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq.*

188.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Wisconsin commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

189.     Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and members of the Damages Class have paid more for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

190.     In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

191.     Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

192.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

193.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition

statutes listed below.

194.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-107(a)(10).

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable and deceptive trade practices," in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)     Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

195.     Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)     During the Class Period, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)     The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.,* including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.,* of the California Business and Professions Code, set forth above;

(d)     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.,* of the

California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(e)     Defendants' acts or practices are unfair to purchasers of Occupant Safety Restraint Systems (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(f)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(h)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Occupant Safety Restraint Systems (or vehicles containing them). Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits,

compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

196.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in the District of Columbia.

(b)    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.

(c)    Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(d)    As a direct and proximate result of the Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq,* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

197.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a)    Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Florida; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.,* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

198.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Occupant Safety Restraint Systems was sold, distributed, or obtained

in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Occupant Safety Restraint Systems as set forth in N.M.S.A., § 57-12-2E.

(c)     Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(d)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

199.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)    Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)    The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)    Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(d)    During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers.

71

(e)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled manufactured, sold, and/or distributed Occupant Safety Restraint Systems in New York.

(f)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

200.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems was sold, distributed, or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)     Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for

Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(d)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(e)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Occupant Safety Restraint Systems in North Carolina.

(f)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

201.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of S.C. Code Ann. §§ 39-5-10, *et seq.* Accordingly, Plaintiffs and

members of the Damages Class seek all relief available under S.C. Code Ann. §§ 39-5-10, *et seq.*

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Damages Class)**

202.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

203.    Plaintiffs bring this claim under the laws of all states listed in the Second and

Third Claims, *supra*.  Plaintiffs also bring this claim under the laws of Missouri, Massachusetts

and Illinois on behalf of the Plaintiffs who have their primary places of business in those three

states and the class members in those three states.

204.    As a result of their unlawful conduct described above, Defendants have and will

continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a

minimum, unlawfully inflated prices and unlawful profits on sales of Occupant Safety Restraint

Systems.

205.    Defendants have benefited from their unlawful acts and it would be inequitable

for Defendants to be permitted to retain any of the ill-gotten gains resulting from the

overpayments made by Plaintiffs or the members of the Damages Class for Occupant Safety

Restraint Systems.

206.    Plaintiffs and the members of the Damages Class are entitled to the amount of

Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.

Plaintiffs and the members of the Damages Class are entitled to the establishment of a

constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

207.     Pursuit of any remedies against the firms from whom Plaintiffs and the Class members purchased vehicles containing Occupant Safety Restraint Systems and Occupant Safety Restraint Systems subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

**PRAYER FOR RELIEF**

Accordingly, Plaintiffs respectfully request that:

A.     The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.     The unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)     An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)     A *per se* violation of Section 1 of the Sherman Act;

(c)     An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)     Acts of unjust enrichment by Defendants as set forth herein.

C.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of

Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.      Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

G.      Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.      Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.

Dated: July 3, 2013

Respectfully submitted,

/s/ *Gerard Mantese*

Gerard V. Mantese (P34424)
David Hansma (P71056)
Brendan Frey (P70893)
Joshua Lushnat (P75319)
Mantese Honigman Rossman
 and Williamson, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
Email: gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

Don Barrett
Brian Herrington
David McMullan
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
Paul A. Sand
Larson • King, LLP

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
Cuneo Gilbert & LaDuca, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com

Michael J. Flannery
Cuneo Gilbert & LaDuca, LLP
300 North Tucker

2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

Phillip Duncan
Richard Quintus
Duncan Firm, P.A.
900 S. Shackleford, Suite 725
Little Rock, AR 72211
Telephone:  (501) 228-7600
phillip@duncanfirm.com
richard@duncanfirm.com

Dewitt Lovelace
Valerie Nettles
Lovelace & Associates, P.A.
Suite 200
12870 US Hwy 98 West
Miramar Beach, FL  32550
Telephone: (850) 837-6020
dml@lovelacelaw.com
alex@lovelacelaw.com

Gregory Johnson
G. Johnson Law, PLLC
6688 145th Street West,
Apple Valley, MN 55124
Telephone: (952) 930-2485
greg@gjohnsonlegal.com

Suite 801
St. Louis, MO  63101
Telephone:  (314) 226-1015
mflannery@cuneolaw.com

Thomas P. Thrash
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
Telephone: (501) 374-1058
tomthrash@sbcglobal.net

Charles Barrett
Charles Barrett, P.C.
6518 Highway 100
Suite 210
Nashville, Tennessee 37205
Telephone: (615) 515-3393
charles@cfbfirm.com

*Attorneys for Dealership Plaintiffs*